## L. B. CAROTHERS v. PRESIDIO COUNTY.

### No. 49.

1. **Commissions—County Treasurer.**—It is the duty of the tax collector to turn over to the treasurer county taxes collected, out of which he could take his commissions; and the county was not liable to the treasurer for commissions unless it received the money, or did some act that was the proximate cause of the loss to him of his commissions.

2. **Tax Collector's Bond.**—Upon failure of collector to turn over money, the treasurer had a right of action to the extent of his injury, in the name of the county, on the bond of the collector, for his commissions, and the recovery to be limited to the penalty in the bond.

3. **Settlement with Sureties.**—The county in the settlement with sureties of tax collector, could not affect the right of the treasurer to recover of the sureties the damage he sustained by a breach of the bond. The sureties could not plead such settlement as a defense against the treasurer's action on the bond.

APPEAL from Presidio.  Tried below before Hon. T. A. FALVEY.

*W. O. Read;* for appellant.—Appellant had a right of action against the county.  Rev. Stats., arts. 994, 4762, 4766; Code Crim. Proc., art. 980; Bastrop County v. Hearn, 70 Texas, 563; Llano County v. Moore, 14 S. W. Rep., 152; Beard v. City of Decatur, 64 Texas, 7; Looscan v. Harris County, 58 Texas, 511; McConnell v. Wall, 67 Texas, 323; Fox v. Jones, 14 S. W. Rep., 1007.

No brief for appellee reached the Reporter.

JAMES, CHIEF JUSTICE.—This cause was disposed of in the District Court by a general demurrer to plaintiff's petition, which the court sustained.

The following is the petition:

"*The State of Texas, Presidio County.*—District Court, September Term, 1890.  To the honorable judge of said court:  Your petitioner, L. B. Carothers, plaintiff herein, complaining of Presidio County, defendant herein, represents to the court, that plaintiff resides in the county of Jeff Davis, in the State of Texas, and that defendant is a body politic and corporate under the laws of said State, and that B. F. Adams is county judge thereof.  For cause of action plaintiff says, that heretofore, to-wit, on the 4th day of November, 1884, he was duly elected to the office of county treasurer of said Presidio County, and afterwards, on the 12th day of November, 1884, qualified as such treasurer by taking the oath of office and giving the bonds required by law, and then and there entered upon the duties of said office, and continued to discharge the same until about the 25th day of February, 1886, when by an order of the District Court

of said Presidio County he was wrongfully and unlawfully removed from said office, and was so removed from said office until the 10th day of December, 1886, when said decree was by the Supreme Court of Texas, on appeal thereto, reversed and set aside.

"That by virtue of his election and qualification to said office as aforesaid, plaintiff was entitled by law to receive all the fees and emoluments pertaining to said office for a period of two years from the date of his election, and until the qualification of his successor in said office, and that his successor did not qualify as such county treasurer until the 19th day of January, 1887. That during the said term plaintiff held said office of county treasurer and the term he was removed therefrom as aforesaid, to-wit, from the 12th day of November, 1884, until the 19th day of January, 1887, C. L. Nevill was the qualified and acting sheriff and tax collector of defendant county, and that S. A. Thompson, James Dawson, J. A. Wedee, John G. Davis, James Sender, and John D. Davis were sureties on his official bond to said county as collector of taxes thereof during said period of time.

"Plaintiff further avers, that during the fiscal year beginning October 1, 1885, and ending September 30, 1886, the said C. L. Nevill, as collector of county taxes for defendant county, collected ad valorem and poll taxes for said county due for the year 1885, amounting in the aggregate to the sum of $20,556.49, and that between the 1st day of October, 1885, and the 31st day of December, 1886, the said C. L. Nevill, as collector of taxes for said county, collected county occupation taxes amounting in the aggregate to the sum of $1000. That between the said last named dates the said C. L. Nevill, as sheriff of defendant county, collected fines and forfeitures due said county amounting in the aggregate to the sum of $1000. That the said C. L. Nevill failed and refused to pay over said moneys or any part thereof to plaintiff, as he was required by law to do, but wrongfully and unlawfully withheld the same, and has since continued to unlawfully and wrongfully withhold said moneys in his own hands, and has refused, and still refuses, to pay plaintiff his commission thereon to which he was and is entitled by law, by virtue of his said office of county treasurer of defendant county as aforesaid.

"Plaintiff further alleges, that he was as such county treasurer entitled to receive and disburse all of said moneys, and was and is entitled to commissions thereon as follows: For receiving $20,556.49 at 2½ per cent, $514.17; for disbursing $20,556.49 at 2½ per cent, $514.17; for receiving $1000 occupation taxes at 2½ per cent, $25; for disbursing $1000 at 2½ per cent, $25; for receiving $1000 collection on fines and forfeitures at 2½ per cent, $25; for disbursing $1000 at 2½ per cent, $25; amounting in aggregate to $1128.34.

"That it was by law made the duty of C. L. Nevill, as sheriff and tax collector of defendant county, to pay over to plaintiff all of said moneys

as the same were by him collected, and it was by law the duty of the County Commissioners Court of said Presidio County to require the said C. L. Nevill to pay over to plaintiff all of said moneys as the same were collected; and that the said C. L. Nevill failed and refused to pay over said moneys or any part thereof, as he was required by law to do, and that said Commissioners Court failed and refused to require and compel him to pay over to plaintiff, as county treasurer, said moneys or any part thereof, as it was by law their duty to do.

" That during the aforesaid fiscal year, and until the 19th day of January, 1887, the said Presidio County was indebted largely in excess of the aforesaid sums of money, and that all of said moneys would have been disbursed by plaintiff during his said term of office if the said C. L. Nevill, as he was required by law to do, had paid the same over to him as such county treasurer.

" Plaintiff further alleges, that the Commissioners Court of said Presidio County, on or about the 5th day of September, 1888, by an order made and entered on the minutes of said court, under an agreement between said court and the aforesaid sureties on the said C. L. Nevill's bond as collector of taxes of said Presidio County, except John D. Davis, who was then and is now notoriously insolvent, accepted the notes of each of said sureties, to-wit, S. A. Thompson, J. A. Wedee, John G. Davis, James Dawson, and James Sender, each for the sum of $500, with 8 per cent interest from the 27th day of August, 1888, and due and payable on the 27th day of August, 1889, and then and there in said order, in consideration of the execution and delivery of said notes by said sureties on said bond, agreed to release, and did release, each and all of said sureties on said bond from any and all further liability on the aforesaid bond of the said C. L. Nevill as collector of taxes of said Presidio County, by which action of said court, the said C. L. Nevill being then and now is notoriously insolvent, the said Presidio County then and there became liable, bound, and in law promised to pay plaintiff the aforesaid sums of money due him as commissions as aforesaid, together with accrued interest thereon.

" That on the 26th day of February, 1890, plaintiff, by his attorney, presented all the aforesaid claims for commissions to the honorable Commissioners Court of said Presidio County in open court, and then and there requested said court to audit and pay plaintiff said claims, which claims said court then and there refused to consider and audit, or to audit or to agree to pay any part thereof. And again, on the 30th day of June, 1890, plaintiff, by his attorney, presented said claims for commission to the said Commissioners Court of defendant county in open court, and requested said court, by written application thereto, to commence and prosecute suit against the said C. L. Nevill, and the aforesaid sureties on his bond as collector of taxes of said Presidio County, in the

name of said Presidio County, for the use and benefit of plaintiff, for the aforesaid commissions due plaintiff as aforesaid by virtue of his said office of county treasurer of said county, or to audit and pay off and discharge said claim due plaintiff as aforesaid, when said court refused to consider application or to take any action in reference thereto; by which action of said court in refusing to consider application and to act as therein requested, said Presidio County became liable, bound, and in law promised to pay plaintiff the aforesaid sums of money due him as commissions as aforesaid, with all accrued interest thereon. That said sums of money have long since been due, and though payment thereof has often been demanded of defendant, to pay the same or any part thereof defendant has wholly failed and refused, and still fails and refuses, to plaintiff's great damage.

" The premises considered, plaintiff prays that defendant be cited in the terms of the law to answer this petition, and that upon the trial thereof he have judgment for the aforesaid sums of money alleged to be due him, with interest thereon from the 1st day of January, 1887, and all costs of suit, and for general and special relief."

*Conclusions of Law.*—The county, it seems, had nothing to do with the removal of plaintiff from his office. Nor has the county received from the collector or his sureties any of the money upon which plaintiff's commission is calculated. We see no reason for holding the county responsible to the treasurer for commissions, unless it were shown that the county received the same, or not receiving the same did some act which was the proximate cause of plaintiff's commission being lost to him.

The allegation in the petition, that the county commissioners failed and refused to compel the collector to pay over to plaintiff, as county treasurer, said moneys or any part thereof, if true, would not render the county responsible for plaintiff's commissions, for the treasurer, during all the time he was qualified and was the proper officer to receive these funds, had the right to institute a suit against the collector for that purpose, and it is evident while he had the equal right with the commissioners to institute such proceedings, he could not complain of their failure to do so. McConnell v. Wall, 67 Texas, 323.

It is further alleged by plaintiff, that on September 5, 1888, the County Commissioners Court, by an order entered in its minutes, under an agreement between said court and five of the six sureties on the collector's bond (the collector and the other surety being then insolvent), accepted the notes of each of said sureties for $500, payable August 27, 1888, with 8 per cent interest per annum, and in consideration thereof agreed to, and did, release each and all of said sureties from any and all further liability in said bond, and by reason of this act the county then and there became liable to plaintiff for his commissions.

The question arises, whether the legal consequences of such action is as declared by plaintiff.    Our statute made it the duty for the collector to pay over these moneys to the treasurer, and it was the treasurer's right from these moneys to retain his proper commissions.    The bond of the collector was conditioned for the faithful performance of the duties of his office.    The treasurer thus derived his compensation from the moneys required to be paid over to him by the collector, and the collector and his sureties having full knowledge of this condition of things by the laws of the State in force at the time of executing the bond, knew that the conversion of the money by the collector would result in loss to the treasurer in respect to his commission.    The commissions did not go to the county, and the county did not have any direct interest in them.    They were the property of plaintiff.    The defalcation of the sheriff, therefore, considered in connection with the other matters alleged in the petition, had the effect of working an injury to the treasurer.

The next question which seems material for us to determine is, whether or not the treasurer, to the extent of his injury, had a right to proceed upon the bond against the collector and his sureties.    We believe that he had.    While the statute in reference to collector's bonds does not expressly authorize suit by any person injured, in his own name, for a breach thereof, as it does in the case of sheriffs' and county clerks' bonds, still, under the general principles governing official bonds, we are of opinion that suit will lie against an officer on his official bond, by a party who can show that he has suffered damage by a breach thereof.

In Murfree on Official Bonds, section 323, it is stated:    "It is usually provided in statutes authorizing official bonds to be required of State, county, or municipal officers, that suits may be brought upon them in the name of the official obligee ' upon the relation ' or ' to the use ' of the party injured by the breach of the bond or interested in its enforcement. Whenever, however, this express provision is omitted in the statute itself, the deficiency is supplied by the construction given to such statutes by the courts, whenever a proper case for such ruling is presented.    *    *

" The laws which provide for the execution of bonds similar to the one before us do not require them for the purpose of protecting the rights of the State [county] alone.    They are also designed to secure the faithful performance of official duties, in the discharge of which individuals and corporations have a deep interest, and therefore they should have the privilege of suing on such bonds for injuries sustained by them through the negligence or malconduct of the officers.

" There is no doubt that it is incumbent on the party suing on the bond to show that he has an interest in it before he can recover in a regular trial prosecuted to verdict."

Expressions of our own court are to the same effect. Crews v. Taylor, 56 Texas, 465.    We can readily see how the facts alleged show damage to

plaintiff by reason of the breach of the bond complained of, and a damage peculiar to him, and it seems to us a case which entitles him to an action upon the bond. Of course, there being no law providing that he could bring such suit in his own name, as with sheriffs', county clerks', and other bonds, it would have been necessary for him to sue in the name of the county "for his use," and to the extent only of his injury; and as in other cases, the right to recover against the sureties would be limited to the penalty of the bond.

There was no obligation resting on the county, if in the management of its financial affairs it deemed it inadvisable, to bring suit on the collector's bond, and the failure to do so would not of itself subject the county to liability for the treasurer's commissions; and this is clearly so, when the latter himself could have maintained suit for these commissions against the collector and his sureties, so far as his interest was made to appear.

The county, however, might have become liable for these commissions if it had received the money; that is to say, it could probably have been held to account to the plaintiff for his proper percentage on all sums actually collected upon the collector's bond. But there is no allegation that the county ever received a dollar from that source. In our opinion, the county, in the alleged settlement with the sureties, did not, and could not, affect any right the plaintiff had to recover of the sureties for what damage he had suffered from the breach of the bond. The sureties could not have pleaded the settlement with the county as a defense against such an action by plaintiff against them. Plaintiff could not in any event have, under his allegations, a cause of action against the county for more than the percentage on the $2500 in notes taken from the sureties, and he would probably not have this until the county had derived money from the notes; and the commission on the entire amount of these notes was not sufficient to give the District Court jurisdiction.

We see no error in the ruling of the District Court, and the judgment is affirmed..

*Affirmed.*